TEAGUE v. SCHAUB.

(Filed November 24, 1903.)

CONTRACTS—*Restraint of Trade—Physicians and Surgeons.*

> A contract between two physicians in a town that at a certain time one will locate elsewhere, if "the field is not larger" when the contract is to be executed than when made, is void because too indefinite.

WALKER and DOUGLAS, JJ., dissenting.

ACTION by R. J. Teague against O. P. Schaub, heard by Judge *W. R. Allen* at June Term, 1903, of the Superior Court of PERSON County. From a judgment for the defendant the plaintiff appealed.

*Kitchin & Carlton,* for the plaintiff.
*Boone, Bryant & Biggs, W. T. Bradsher* and *J. S. Merritt,* for the defendant.

MONTGOMERY, J. The plaintiff brought this action to enjoin the defendant, permanently, from practicing medicine

in the town of Roxboro and the territory adjacent thereto,
for damages arising on an alleged breach of contract in which
the defendant had agreed not to practice medicine in Roxboro
and the adjacent territory, and for an amount alleged to be
due by the defendant for money collected by the defendant
belonging to the plaintiff and the defendant as partners in the
practice of medicine.   In the case on appeal it appears that
all other matters in the action had been settled except those
pertaining to the defendant's right to practice medicine in
Roxboro, and the plaintiff's claim for the defendant's practic-
ing there contrary to his agreement, and that these depended
upon the construction of the agreement set out in paragraph 2
of the complaint.   His Honor was of the opinion that the
contract alleged in the complaint was indefinite as to territory
and could not be aided by extrinsic evidence.   That part of
paragraph 2 of the case necessary to be referred to is as fol-
lows: "We, the undersigned, agree to continue the practice
of medicine under the firm name of Teague & Schaub until
December 1, 1901, Doctor Teague to receive 60 per cent. and
Doctor Schaub 40 per cent. of collections for work done in
general practice, except such time as Dr. Schaub shall have
entire charge of said practice, then Dr. Schaub shall receive
75 per cent. of collections for work done during such time.
Some time in December, 1901, Dr. Schaub agrees to take a
review course and make application for a hospital course.
If said Dr. Schaub gets appointment in a hospital he then
releases the entire practice to Dr. Teague.   If he (Schaub)
does not get the appointment in hospital or the field is not
larger then than now, said Schaub will locate elsewhere unless
a new contract is made."   On the back of the agreement the
following was written: "Dr. T. further agrees to leave the
field open to Dr. Schaub's entire care for a period of from
two to four months.   R. J. Teague, O. P. Schaub.   Rox-
boro, N. C., April 4."

We concur in the view taken by his Honor.  This case does not present that of a professional man selling out his goodwill and practice to another for a valuable consideration.  It is an attempt on the part of the plaintiff to force the defendant to leave the town of Roxboro and thereby to get rid of his competition under the provisions of the contract which we have recited.  The defendant did not agree to leave Roxboro or the territory in which he actually practiced if he did not get the appointment in the hospital, but that he would leave if he did not get the appointment and in case the field should not be larger than when he made the contract.  We cannot tell whether that word "field" meant the receipts from the practice, the number of patients or the extent of territory.  It is indefinite in all three aspects, and we see no way of enforcing the contract.  The word "Roxboro" written on the back of the contract, so far as the matter before us is concerned, under the case on appeal, means no more than that the contract was signed at that place.

No error.

WALKER, J., *dissenting.*  This was an action to restrain defendant from practicing medicine in the town of Roxboro and to recover damages for a breach of the contract under and by virtue of which the plaintiff claimed the right to have the defendant enjoined.

It is necessary to an understanding of the matter involved that the entire contract should be set out.  It is as follows:

"We, the undersigned, agree to continue the practice of medicine under the firm name of Teague & Schaub until December 1, 1901; Dr. Teague to receive 60 per cent. and Dr. Schaub 40 per cent. of collections for work done in general practice, except such time as Dr. Schaub shall have entire charge of said practice, then Dr. Schaub shall receive 75

per cent. of collections for work done during such time.    Some time in December, 1901, Dr. Schaub agrees to take a review course and make application for a hospital course.    If said Dr. Schaub gets appointment in a hospital he then releases the entire practice to Dr. Teague.    If he (Schaub) does not get the appointment in hospital, or the field is not larger then than now, said Schaub will locate elsewhere, unless a new contract is made.

"It is furthermore agreed that if Dr. Schaub cannot secure an appointment by June 1, 1902, he remains here until that time, and if a contract between Teague and Schaub cannot be agreed upon by themselves they shall refer the matter to three men, one to be appointed by each of us, the third to be selected by the other two referees, and said Teague and Schaub shall abide by their decision.    If Dr. Schaub remains here after taking hospital course until June 1 he is to receive 45 per cent. of the collections for work done in general practice during such time.

Roxboro, N. C., April 3, 1901.

R. J. TEAGUE,
O. P. SCHAUB."

And thereafter they amended it by adding on the back thereof the following: "Dr. T. further agrees to leave the field open to Dr. Schaub's entire care for a period of from two to four months.    Roxboro, N. C., April 4.    R. J. Teague, O. P. Schaub."

It was agreed in the Court below that all matters in controversy between the parties had been settled and that only one question is presented to the Court for its consideration, namely, whether "the contract is void because of indefiniteness as to the territory," and the Court below, upon the submission to it of this single question, held "that the said contract, in so far as it relates to the right to restrain the defend-

ant, is void for indefiniteness as to the territory and cannot be aided by extrinsic evidence," and the plaintiff's prayer for said relief was thereupon denied.

The Court below did not pass upon any question relating to the consideration of the contract, so as to determine whether there was a consideration sufficient to support it, nor did that Court take the view that this suit was "an attempt on the part of the plaintiff to force the defendant to leave the town of Roxboro and thereby to get rid of his competition under the provisions of the contract," which have been recited. There is nothing on the face of the contract, as I think, to justify the conclusion either that there was any such intent or purpose on the part of the plaintiff in bringing this action or that the contract is not founded upon a valuable consideration. If these matters were in controversy between the parties, the plaintiff clearly had the right to be heard by a jury, and to bring forward his evidence for the purpose of showing what the real facts of the case were.

The plaintiff's contention is that the defendant was in a measure his beneficiary, and that he, by reason of plaintiff's kindness to him having gained an advantage, now seeks to retain it and make use of it to the plaintiff's detriment in the community where the plaintiff had established a lucrative practice, and which, to advance defendant's interest and improve his then embarrassed situation, he had generously shared with him, the latter thereby acquiring the benefit of a practice ready to hand. It would be inequitable and against good conscience, as the law views the relation of the parties so established, to enable the defendant thus to deal with the plaintiff.

Those matters surely ought not to be considered upon an appeal from a judgment which, by agreement of the parties, presented but one question, which arose solely upon a consideration of the contract itself and which necessarily, by the

form of its submission to the Court, deprived the plaintiff of the opportunity of dissolving the facts bearing upon matters not involved in that question. The plaintiff should not be condemned before he is heard, and we should not consider and decide a matter which the parties have not seen fit to present to us. If I am permitted to refer to the pleadings for the purpose of showing the true nature of the controversy between the parties, I do not hesitate to say that there is abundant allegation on the part of the plaintiff, which, if sustained by proof, would have shown that there was a valuable and adequate consideration and that this suit was brought in good faith. If the plaintiff's allegations are true, he had been a benefactor of the defendant, and had extended aid and assistance to him when he most needed it. This Court decides against the plaintiff a question, as one of law, which must in its very nature involve a finding of facts which do not appear on the face of the contract.

If the plaintiff had supposed that the only question submitted to the Court by the agreement of the parties involved in its decision the matter as to the consideration of the contract and the object in bringing the suit, he, perhaps, would not have entered into the stipulation with the defendant, and I do not think we should undertake to decide questions which the parties have not called upon us to pass upon and which will at least place one of the parties at a disadvantage. I am not aware of any rule of law to the effect that the consideration of a contract, which is not required to be in writing, shall be expressed in the writing. My understanding is that it may be shown *dehors* the contract by oral evidence, and that the defendant, therefore, cannot agail himself of a want of consideration, unless that fact appears affirmatively in the contract itself. It seems to me that by a proper construction of the contract and an examination of the facts stated in the pleadings this appeal does present the case of a professional

man selling out his interest in the business of the firm for a valuable consideration, coupled with a covenant on his part to refrain from practicing his profession within a well-defined territory. This brings us to a consideration of the very question upon which the case was decided in the Court below.

In the second clause of the contract there is the following stipulation: "It is furthermore agreed that if Dr. Schaub cannot secure an appointment by June 1, 1902, he remains here until that time." Then follows the provision for the arbitration of their differences if the parties themselves cannot make an agreement. It is then further provided that "if Dr. Schaub remains here after taking the hospital course until June 1, he is to receive forty-five per cent. of the collections for work done in general practice during such time." The contract is dated at Roxboro, April 3, 1901, and signed by the parties. The writing on the back of the contract, which is quoted in the opinion of the Court, is also dated at Roxboro.

The question to be determined is to what does the adverb "here" refer. We are told by the lexicographers that the proper definition of the word "here," when used as an adverb, is: "In the place or region where the person speaking is; on this spot or in this locality." If this be its true meaning and significance, how can it be doubted for a moment that when it was used in the contract the parties referred to Roxboro? Besides, the plaintiff alleges in his complaint and the defendant admits in his answer that at the time the contract was executed the parties practiced medicine in Roxboro under the firm name of Teague & Schaub, and it is to be fairly inferred from the pleadings that they both lived in Roxboro at that time. I do not see how the conclusion can be avoided that the parties were referring to the place where they then were and where the contract was written, dated and executed.

The learned Judge who presided at the trial of the case was perhaps influenced too much by the consideration that the

practice of these two physicians extended beyond the boundaries of Roxboro and included within its limits "the territory adjacent thereto," as alleged in the pleadings, and also by the use of the word "field" in the addendum, which was written on back of the contract; but when we carefully consider those expressions it is perfectly clear that they do not refer to the territory in which the defendant agreed that he would not practice, because that is fixed in the body of the contract by what is agreed in the second clause.

It was said on the argument that the limits of Roxboro were indefinite, it not appearing to be an incorporated town. The maxim *id certum est quod certum reddi potest* answers this suggestion. If it is an incorporated town, then under the maxim just quoted that fact may be proved by oral evidence. If the uncertainty as to the locality be a defect in the contract, it is not a patent but a latent one. The description of the place is sufficient to let in extraneous evidence to make it definite and certain. But even if it is not an incorporated town, I don't think it necessarily follows that the contract is void for that reason, because every town, whether incorporated or not, has limits which are practically fixed or at least determinable. On the argument it was stated by plaintiff's counsel that Roxboro is an incorporated town and this was not denied. I don't mean to suggest that this is in any way conclusive upon the defendant as an admission by him, or even as legal evidence of the fact which could be considered in this Court, but it shows that the alleged defect can be cured by proof, and that the plaintiff should be permitted to establish the fact, if he can do so, in order to correct any ambiguity, if such there be in the contract, in this respect.

In the case of *Kramer v. Old*, 119 N. C., 1, 56 Am. St. Rep., 650, 34 L. R. A., 389, the defendants agreed "that they would not continue the business of milling in or in the

vicinity of Elizabeth City," and there was no reference in the contract to Elizabeth City as an incorporated town, and yet this Court held that the defendants would be enjoined from prosecuting the business in that town.

In my opinion the defendant has, in language too explicit for misconstruction, promised and agreed that, for a sufficient consideration received by him, he would not practice within the limits of the town of Roxboro, and that he should be enjoined from doing so in violation of that stipulation of the contract.

It is said that the defendant did not agree to leave Roxboro or the territory in which he actually practiced if he did not get the appointment in the hospital, but if he did not get the appointment *and* the field should not be larger than it was at the time the contract was made. The contract expresses this stipulation, not conjunctively but disjunctively, the word "or" and not the word "and" having been used by the parties. But this meaning is made perfectly clear when we refer to the next clause of the contract, in which the time when he should depart and cease to practice in Roxboro is fixed as June 1, 1902, and the condition is "if he cannot secure an appointment by that time." It is also to be noted that the expression used in the opinion of the Court refers to the month of December, 1901, while the expression in the second clause refers, as we have said, to June 1, 1902, with a different condition based, I presume, upon the extension of time to that date. The particular stipulation to be gathered from the contract is that at that time he should cease to practice his profession in Roxboro, and the plaintiff should thereafter have and enjoy the entire practice and good-will of the firm for a consideration growing out of the dealings between the parties before and after the making of the contract. This is, in substance if not in form, a sale by the defendant of his interest in the business to the plaintiff.

That contracts of this kind are not considered as being unreasonably in restraint of trade, and therefore not against public policy, has frequently been declared by the Courts, and they will be enforced specifically, and breaches thereof prevented by injunction, because no other remedy is adequate. *Cowan v. Fairbrother,* 118 N. C., 406; 32 L. R. A., 829; 54 Am. St. Rep., 733; *Kramer v. Old,* 119 N. C., 1, and cases cited. When the Court proceeds by injunction to restrain a breach of contract, it may well be doubted if the question whether there was a sufficient or adequate consideration is involved, the contract being then treated as a completed or executed one, and the only consideration required to support it being the same as would be sufficient at law in an action to recover upon the contract. *Kramer v. Old, supra.* Whatever the parties themselves have treated as a sufficient consideration will be so regarded by the Court in an action to restrain a breach of it. It is certainly not an executory contract, and the Court is not called upon to specifically enforce it, but merely to prevent a breach, and the jurisdiction of the Court arises out of the fact that there is no other adequate remedy. 24 A. & E. Enc. (2 Ed.), p. 852. Bispham, in his work on Equity, sec. 228, says: "The doctrine has been said to be that a restraint upon trade, in order to be good at law, must be, in the first place, *partial;* in the second place, reasonable, that is, such a restraint only as it may be necessary to protect the business of the party for whose benefit the contract was made; and, thirdly, founded on valuable consideration; although as to this last point it is now settled that the Courts will not enter into the question of adequacy of consideration, unless, perhaps, the inadequacy is such as to stamp the agreement as an unreasonable one." A Court recognized as one of high authority has said:

"A contract restraining one of the parties from the exercise of a trade within a limited locality, when there is rea-

sonable ground for the restriction, is valid. Inquiry will not be made into the adequacy of the consideration—its value will not be measured against the uncertain value of the right to carry on the trade or business—if it be reasonable, it is enough." Smith's Appeal, 113 Pa. St., 590.

In McClurg Appeal, 58 Pa. St., 54, which was a suit by one physician to restrain another from practicing in a certain locality, the contract was held to be reasonable and enforcible, and the defendant was enjoined. In discussing the question of consideration the Court says: "If there is no consideration, or a consideration of no real value, the contract in restraint of trade, which in itself is never favored in law, must either be a fraud upon the right of the party restrained or a mere voluntary contract, *nudum pactum,* and therefore void. But if by adequacy of consideration more is intended, and that the Court must weigh whether the consideration is equal in value to that which the party gives up or loses by the restraint under which he has placed himself, we feel ourselves bound to differ from that doctrine. A duty would thereby be imposed upon the Court in every particular case, which it has no means whatever to execute. It is impossible for the Court, looking at the record, to say whether in any particular case the party restrained has made an improvident bargain or not. *Hitchcock v. Coker,* 6 Ad. & El., 438. This is not like a bill for the specific performance of an unexecuted contract, where, if the bargain is a hard one or founded on an inadequate consideration, a Chancellor will refuse to interfere and leave the party to his legal remedy."

This Court has sustained and enforced a contract substantially similar in its terms to the one now under consideration. In that case the defendant agreed not to practice the profession of medicine in the territory surrounding the town of Yadkinville. The Court held that there was "no rule by which the surrounding territory could be laid off," but that

the contract would be enforced and the breach of it enjoined as to the town of Yadkinville. It is true it appeared in that case that Yadkinville was an incorporated town, but the language of the Court shows that if there had been any means of ascertaining the limits of the locality, though they were not definitely fixed in the contract, the plaintiff would be entitled to relief. *Hauser v. Harding,* 126 N. C., 295. I do not see why the rule which prevails in cases of ejectment, where the question is one of boundary, should not govern in this case. There is no more reason why the contract should be certain as to the precise limits in the one case than that the deed should be certain as to the boundaries in the other, provided, always, that the limits or boundaries can be determined by oral evidence when there is no patent ambiguity. While I have discussed generally the merits of the case, because they are considered in the opinion of the Court, it does not appear to me that any question is involved except the single one which the parties have submitted, namely, "whether the contract is void because of indefiniteness as to territory," it being stated in the judgment that all other matters in controversy between the parties had been settled. It will be found by reference to the record that a jury trial was waived, and that this was the only question submitted to the judge for his decision. I think the judgment should be set aside and a new trial awarded, so that this question as to the limits of the town of Roxboro may be tried upon evidence introduced by the respective parties, either by a jury or by the Court, as the parties may agree.

DOUGLAS, J., concurs in the dissenting opinion.