K. R. WOOTEN v. R. E. HARRIS.

(Filed 21 September, 1910.)

1. **Contracts — Consideration — "Good Will" — Sale of Business — Restraint—Writing.**

    An agreement as part of the consideration of purchase of a business that the vendor will not engage in such business in the town, etc., need not be in writing to be valid.

2. **Contracts—Interpretation—"Good Will"—Restraint—Sale of Business—Territory.**

    An agreement made with the purchaser of a business that the vendor will not engage in such business in that town "or near enough thereto to interfere with the vendee's business," is not too indefinite a contract to be enforceable, especially when the vendor again commences the business near the place of the vendee in the same town.

3. **Contracts—Interpretation—"Good Will"—Restraint—Sale of Business—Duration.**

    An agreement with the purchaser of a business that the vendor will not again engage in the business in the same town, etc., or "near enough thereto to interfere with plaintiff's. business" is limited in duration to the life of the plaintiff, and thus being definite is enforceable in regard to duration of time.

4. **Contracts—Restraint—Reasonable Monopolies and Trusts—Interpretation of Statutes.**

An agreement of one selling a local mercantile business, not to engage therein in competition with the vendee in that vicinity, does not contravene chapter 218, section 1, subsection 2, Laws 1907, being reasonable in its scope, duration and territory, and for the protection of the "good will" sold, the statute being directed against monopolies and combinations having the purpose and effect of "preventing competition in selling, or fixing the price or preventing competition in buying," etc., and for that reason against public policy.

APPEAL by plaintiff from *Peebles, J.,* at the January Term, 1910, of PITT.

The facts are stated in the opinion of the Court.

*Moore & Long* for plaintiff.
*Harry Skinner* for defendant.

CLARK, C. J. The complaint alleges that the plaintiff bought out the defendant, who was his partner in general mercantile business in the town of Falkland, including the defendant's interest in the "good will" of the business, and to secure the latter whose purchase was an inducement to the contract, the defendant contracted verbally with plaintiff that he would not again engage in the mercantile business in the town of Falkland, or near enough thereto to interfere with plaintiff's business. The defendant denied the agreement, but before the jury had decided the issue, his Honor announced that he would nonsuit the plaintiff.

The nonsuit the defendant contends should be sustained—

(1) Because the alleged agreement was not in writing. We know of no authority requiring this.

(2) Because the territory "in town of Falkland or near enough thereto to interfere with plaintiff's business" is too indefinite. If this were true as to any place outside of the town, the expression "in the town of Falkland" is definite enough, and the averment is that the defendant had started his new business within the town and in a few feet of the store in whose business he had sold his interest and his share in the "good will." In *Kramer v. Old,* 119 N. C., 1, the expression "in the vicinity of

Elizabeth City," was held good, at least as to Elizabeth City. In *Hauser v. Harding*, 126 N. C., 295, the territory was "the town of Yadkinville and the territory surrounding." This was held an agreement valid within the town limits of Yadkinville.

(3) The defendant further contends that the agreement is invalid because not limited in duration. But by its very terms, "not to interfere with the plaintiff's business," it is limited to the plaintiff's life time and even to such time as he may be engaged in the same business at that place. In *Hauser v. Harding, supra,* it was held that if no time was named or indicated, the limitation would be held valid for the grantor's life time.

And for the last ground of defense the defendant relies upon Laws 1907, ch. 218, sec. 1, subsec. E, which makes it unlawful "for any person, firm, corporation or association engaged in buying or selling anything of value in North Carolina to make or have an agreement or understanding, express or implied, with any other person, firm, corporation or association not to buy or sell said things of value within certain territorial limits within the State, with the intention of preventing competition in selling or to fix the price or prevent competition in buying of said things of value within said limits."

This last is the real point in the case. But in construing such statute we must consider its object and the evil to be remedied. The history of this legislation is known to all. It is an attempt to make unlawful the formation and operation of great trusts and monopolies which may buy out or crush out all competition in certain articles or business with a view to exercise the power of fixing the prices of the raw material and of the manufactured article, that enormous profits may be extorted thereby at the expense of the public. Neither the language, the known purpose of this enactment nor the history of this legislation will justify its application to the purchase, as here, by one partner of the other's interest in a general store in a village or town; nor to a similar purchase between other individuals. Such contract, when reasonable in its scope and as to duration and territory, cannot possibly lend itself to the formation of trusts or monopolies, unless shown to be one of many similar con-

tracts, tending to engross that particular business in a given territory. There is here not shown in evidence any "intention of preventing competition in selling, or to fix the price or prevent competition in buying, of said things of value within said limits." This contract is therefore not within the terms of the statute. It might be different, if it were shown that this was one of many similar contracts tending to engross or monopolize any given business, or the sale of any article, within the territory named.

Such contracts as herein have been held not to be "illegal restraint of trade" in many cases in this Court from *Baker v. Gordon,* 86 N. C., 116, down to *Anders v. Gardner,* 151 N. C., 604. To hold such contracts invalid would have no possible effect toward preventing trusts and monopolies, but would merely destroy the "good will" which one has built up in his business, for it would become valueless and unsalable, if the seller cannot guarantee its possession to the vendee by an agreement not to again engage in the same business at the same place in competition with his vendee.

The judgment of nonsuit is

Reversed.